UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

FORD BECKWITH,

|  |  |
|---|---|
| Plaintiff, | **AMENDED REPORT and RECOMMENDATION** |
| -v- | |
| ERIE COUNTY WATER AUTHORITY, | **04-CV-021A(F)** |
| HELEN CULLINAN SZVOREN, | |
| EDWARD J. KASPRZAK, | |
| ROBERT A. MENDEZ, | |
| Defendants. | |

_____

APPEARANCES:        JAMES OSTROWSKI, ESQ.
                    Attorney for Plaintiff
                    The Ellicott Square Building
                    Suite 984
                    Buffalo, New York 14203

                    DAMON & MOREY LLP
                    Attorneys for Defendants
                    HEDWIG M. AULETTA, of Counsel
                    1000 Cathedral Place
                    Buffalo, New York 14202


## JURISDICTION

This matter was referred to the undersigned by the Hon. Richard J. Arcara on

January 23, 2004 for determination of all pretrial matters pursuant to 28 U.S.C. §§

636(b)(1)(A) and (B).  It is presently before the court on the Plaintiff's motion for

summary judgment, filed February 27, 2004 (Doc. No. 5), Defendants' motion to

dismiss the Amended Complaint, filed September 3, 2004 (Doc. No. 19), and

Defendants' cross motion for partial summary judgment filed November 12, 2004 (Doc.

No. 23).

## BACKGROUND

On December 11, 2003, Plaintiff ("Beckwith"), formerly a civil service

probationary employee of Defendant Erie County Water Authority ("the Authority"),

commenced a special proceeding pursuant to Article 78 of the N.Y. Civil Practice Law &

Rules ("the Article 78 proceeding") by a Verified Petition ("the Petition") against the

Authority in New York Supreme Court, Erie County seeking Petitioner's reinstatement,

reimbursement of lost wages and benefits, and costs, including attorneys fees.[1]

Defendants' Notice of Removal, filed January 12, 2004 (Doc. No. 1) Exhibit A.

Defendants removed the Petition to this court on January 12, 2004 (Doc. No. 1).  As

relevant, the Petition alleged Beckwith was wrongfully terminated by the Authority from

his employment with the Authority in bad faith and in unlawful retaliation for exercising

his First Amendment right to free speech.  Beckwith also asserted a violation of a

claimed constitutional right to privacy in his cell phone records that were requested by

the Authority in connection with an investigation leading to his termination.

Based upon the removed Article 78 proceeding, on February 27, 2004, Beckwith

filed, in this court, a motion for summary judgment seeking Beckwith's reinstatement.

In support, Beckwith represented that as he well performed his job with the Authority as

---

[1] Although the Petition alluded to 28 U.S.C. §§ 1983 ("§ 1983") and 1988 for the purposes of awarding attorneys fees, no federal civil rights claims were specifically pleaded under § 1983.  Exhibit A ¶ 38.  While Beckwith's reinstatement as a form of equitable relief and reimbursement of lost wages were also demanded, no request for damages for the alleged violations of Beckwith's federal constitutional rights pursuant to § 1983, was asserted.

a meter service worker and had received "satisfactory" evaluations, his termination by

Defendant was unlawful, arbitrary and capricious, and in bad faith.  Affirmation of

James Ostrowski, Esq. filed February 27, 2004 (Doc. No. 6) ("Ostrowski Affirmation"), ¶

¶ 28; 35-36.

On May 6, 2004, Beckwith filed an amended complaint (Doc. No. 10) (the

"Complaint").  In the Complaint, Beckwith pleaded three causes of action specifically

reasserting the Article 78 proceeding against the Authority and adding two § 1983

claims against Defendants Robert Mendez, Edward Kasprzak, and Helen Cullinan-

Szvoren, the Authority's Executive Director, Comptroller, and Human Resources

Director, respectively, in their individual and official capacities.  In Beckwith's First

Cause of Action, the Article 78 proceeding, Beckwith again sought reinstatement and

recovery of lost wages and benefits against the Authority only ("the First Cause of

Action").  Complaint ¶ ¶ 44-45.  In the Second Cause of Action, brought under § 1983,

Beckwith alleged violations of his First and Fourteenth Amendment rights against all

Defendants claiming that Beckwith was terminated from his position in retaliation for

exercising his First Amendment rights to free speech ("the Second Cause of Action").

Complaint ¶ ¶ 46-52.  Finally, in the Third Cause of Action, also brought under § 1983,

Beckwith alleged violations of the First, Fourth and Fourteenth Amendments against all

Defendants alleging they demanded Beckwith's private cellular telephone records under

threat of termination ("the Third Cause of Action").  Complaint ¶ ¶ 53-59.

As noted, on September 3, 2004, Defendants moved, pursuant to Fed.R.Civ.P.

12(b)(6) ("Rule 16(b)(6)"), to dismiss Beckwith's Second and Third Causes of Action for

failure to state a claim (Doc. No. 19).  Specifically, Defendants maintain that the alleged

speech, for which Beckwith asserts Defendants unconstitutionally punished him by termination, as the basis for Beckwith's Second Cause of Action, is not constitutionally protected, and that as there is no federal constitutional right to privacy in Beckwith's cellular telephone records, Defendants cannot be found to have violated Beckwith's alleged privacy rights in demanding such records from Beckwith.  Following Defendants filing of the instant motion, Defendants later filed, on November 11, 2004, in response to Beckwith's earlier motion for partial summary judgment, seeking Beckwith's reinstatement, on the Article 78 proceeding, a cross motion for summary judgment seeking dismissal of the First Cause of Action, arguing that the Authority legitimately exercised its right under New York law to terminate Beckwith's probationary employment (Doc. No. 23) ("Defendants' Cross Motion").  In opposition to Defendants' cross motion for summary judgment Beckwith filed, on November 12, 2004, a memorandum of law (Doc. No. 27) ("Plaintiff's Memorandum").  On December 3, 2004, Defendants filed a reply memorandum of law in support of their motion to dismiss Beckwith's Second and Third Causes of Action (Doc. No. 28) ("Defendants' Reply Memorandum on Motion to Dismiss") and a reply in support of Defendants' cross motion for summary judgment directed to the First Cause of Action on December 23, 2004 (Doc. 31) ("Defendants' Reply Memorandum to Plaintiff's Summary Judgment Motion").  In opposition to Defendants' cross motion for summary judgment on December 6, 2004, Beckwith filed a counter statement of facts and an affirmation (Doc. Nos. 29, 20) ("Plaintiff's Counterstatement").  Oral argument was deemed unnecessary.

Based on the following, Defendants' motion to dismiss Beckwith's Second and Third Causes of Action should be GRANTED; Beckwith's summary judgment motion

and the Defendants' cross motion for summary judgment on Beckwith's First Cause of

Action should be DISMISSED, without prejudice, and the First Cause of Action (and

related motions) should be REMANDED to state court for lack of subject matter

jurisdiction in this court.

## **FACTS**[2]

In the Amended Complaint, Beckwith states that he was hired by the Authority as

a meter service worker on May 6, 2003, subject to a 26-week probationary period which

commenced May 12, 2003.  *Id.* ¶¶ 9 -10.  Beckwith also alleges he performed his job

satisfactorily and received performance evaluations from his supervisors confirming

such fact.  *Id.* ¶ 13; Ostrowski Affirmation ¶ ¶ 11-12; Affidavit of Russell J. Held, dated

December 22, 2003, Plaintiff's Motion for Summary Judgment, Exhibit C, ¶ ¶ 2-3.  It is

undisputed that Beckwith's probationary period ended November 12, 2003.  Beckwith's

Statement of Undisputed Facts, Exhibit E to Notice of Motion for Summary Judgment ¶

6.  Defendants do not contest that Beckwith was terminated by letter dated October 11,

2003.  Complaint ¶ 11; Answer ¶ 11.

On July 24, 2003, Beckwith was asked to supply his cellular telephone records

from the time of his hiring.  Complaint ¶ 26.  Beckwith alleges that the Authority

demanded the records because Beckwith had telephoned, supposedly outside working

hours, "the [news] media" to alert them to a labor controversy which had recently arisen

at the Authority and related picket line outside the Authority's offices located in this

---

[2] Taken from the pleadings and papers filed in this action.

district.[3]  *Id.* ¶ 30.  Specifically, Beckwith alleges that he believed "[t]he controversy

involved a frivolous and punitive disciplinary action taken against another employee."

*Id.* ¶ 32.  Further, Beckwith claims that there was "a long history of labor problems at

the AUTHORITY, caused by poor and politically-motivated management practices and

resulting in numerous unnecessary legal actions, costing ratepayers tremendous sums

of wasted legal fees and administrative time and effort," and that Beckwith "wished to

bring yet another abusive management decision to public light."  *Id.* ¶¶ 33-34.

On September 24, 2003, Beckwith was asked to attend a meeting with Matthew

Baudo, Secretary of the Authority, and Defendant Cullinan-Szvoren, the Human

Resources Director.  At that meeting, numerous complaints about Beckwith's work-

related behavior were discussed, including alleged rude conduct by Beckwith occurring

during a training session, directed to shoe and eyeglass vendors and to a nurse

involved in Beckwith's pre-employment physical.  Complaint ¶¶ 17-18.  Beckwith

asserts these incidents were either trivial or did not occur, and, in any event, occurred

during the first three weeks of Beckwith's probationary employment.  *Id.* ¶¶ 19, 21.

Additionally, Beckwith alleges that Baudo advised him at the meeting that the incidents

had been resolved.  *Id.* ¶ 23.

In a letter dated October 10, 2003, the Authority informed Beckwith that his

probationary employment was being terminated by the Authority effective October 17,

2003 because the Authority had determined that his "conduct and performance [were]

not satisfactory."  Exhibit B to Petition (Letter to Beckwith from Defendants Mendez and

---

[3]  The particular news "media," print or electronic, *i.e.*, radio or television, contacted by Beckwith is not revealed in the record.

Kasprzak dated October 10, 2003).  In a post-termination interview, Baudo further advised Beckwith that the discharge was a result of the four incidents discussed with Beckwith at the September meeting.  Complaint ¶ 24.

## DISCUSSION

### 1. Defendants' Motion to Dismiss[4]

Defendants argue that Beckwith's Second and Third Causes of Action must be dismissed for Beckwith's failure to state a claim pursuant to Rule 12(b)(6).   In considering a motion to dismiss for failure to state a claim, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party.  *See Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999), *cert. denied,* 531 U.S. 1052 (2000).  Dismissal is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.), *cert. denied,* 513 U.S. 816 (1994).

### A.  Plaintiff's First Amendment Claim – The Second Cause of Action

Beckwith alleges that he telephoned the news media "about a labor controversy and picket line" at the Authority's offices.  Complaint ¶ 30.  According to Beckwith, "[t[he controversy involved a frivolous and punitive disciplinary action taken against another employee."  *Id.* ¶ 32.  Beckwith's purpose was to bring this "abusive management

---

[4]  The court first addresses Beckwith's Second and Third Causes of Action, in that order, as if these claims are, as recommended, dismissed, Beckwith's First Cause of Action should be remanded for lack of subject matter jurisdiction without this court's consideration of its merits or the related motions.

decision to public light." *Id.* ¶ 34.  Beckwith claims that in so doing he was, as a public employee, exercising his right of free speech, while the Defendants contend that by this communication Beckwith merely expressed his disagreement over the Authority's handling of a personnel matter.  *Id.* ¶ ¶ 35-36.

The Supreme Court has held that "a public employee does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." *Connick v. Myers*, 461 U.S. 138, 140 (1983) (citing *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968)).  In *Connick,* the Court also recognized that the state has an interest, as an employer, in regulating speech by employees so as to promote the efficiency of public services performed by its employees.  *Id.*  Acknowledging the wide variety of situations where critical statements by a public employee may be thought to furnish grounds for dismissal, the Supreme Court has declined to "lay down a general standard against which all such statements may be judged." *Pickering*, 391 U.S. at 569.  Instead, to assess the extent to which a state may regulate the speech of its employees, courts must balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id*. at 568.

To prevail on his First Amendment retaliation claim, brought pursuant to § 1983, Beckwith must demonstrate that: (1) his speech was constitutionally protected, (2) he suffered an adverse employment decision, and (3) a causal connection exists between Beckwith's protected speech and the adverse employment determination against him,

8

so it can be said that his speech was a motivating factor in the determination. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-87 (1977). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick,* 461 U.S. at 147-48. More specifically, speech will be considered to address a matter of public concern and thus protected by the First Amendment if it can be "fairly considered as relating to any matter of political, social, or other concern to the community." *Id.* at 146. Speech pertaining to internal personnel, *i.e.*, labor-management, disputes and working conditions is generally held not to involve matters of public concern. *Id.* at 147 ("[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.").

In resolving a public employee's alleged violation of his First Amendment right to free speech, the fundamental question is whether the employee is seeking to vindicate personal interests or bring to light a matter of political, social, or other concern to the community. *Rao v. New York City Health & Hospitals Corp.*, 905 F.Supp. 1236, 1243 (S.D.N.Y. 1995). Thus, a court must "focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose." *Lewis v. Cowen*, 165 F.3d 154, 163-64 (2d Cir.), *cert. denied,* 528 U.S. 823 (1999). Whether particular speech addresses a matter

of public concern is a question of law for a court to decide.  *Id.*; *see also Connick*, 461 U.S. at 148, n. 7.

In this circuit, courts have consistently held that the First Amendment does not protect disgruntled public employees who voice essentially personal complaints about their employers.  *See Ezekwo v. New York City Health & Hospitals Corp.*, 940 F.2d 775 (2d Cir.) (resident physician's complaints regarding operation of hospital department were not protected speech), *cert. denied,* 502 U.S. 1013 (1991); *Hellstrom v. U.S. Dep't of Veterans Affairs*, 178 F.Supp.2d 164 (N.D.N.Y. 2001) (comments by laboratory chief regarding the manner in which a personnel matter was handled do not constitute protected speech for purposes of the First Amendment), *aff'd,* 46 Fed. Appx. 651 (2d Cir. 2002); *Harris v. Merwin*, 901 F.Supp. 509, 512 (N.D.N.Y. 1995) (professor's criticism of appointment of department chair not protected speech); *Blum v. Schlegel*, 830 F.Supp. 712, 730 (W.D.N.Y. 1993) (law school professor's letters to faculty members concerning his career advancement and school policies and curriculum were personal gripes by a disgruntled employee that "unquestionably do not fall within the protection of the First Amendment."), *aff'd,* 18 F.3d 1005, 1012 n. 6 (2d Cir. 1994); *Saraceno v. City of Utica*, 733 F.Supp. 538, 542 (N.D.N.Y. 1990) (municipal water board employee's letter to the board of commissioners expressing the employees' dissatisfaction with how they were treated, their concern over the possibility of losing their jobs, and their low morale, did not touch upon matters of public concern).

On the other hand, employee complaints about a public employer may be protected if the employee sought relief against "pervasive or systemic <u>misconduct</u> by a

public agency or public officials," or the speech was "part of an overall effort. . . to correct allegedly <u>unlawful</u> <u>practices</u> or bring them to public attention."  *Kantha v. Blue,* 262 F.Supp.2d 90, 101 (S.D.N.Y. 2003) (complaints about gender discrimination against a supervisor were protected speech) (underlining added); *see also McGrath v. Nassau Health Care Corp.,* 217 F.Supp.2d 319, 328 (E.D.N.Y. 2002) (motion to dismiss denied where complaints involved supervisor's sexual harassment of co-worker).

Here, Beckwith has failed to sufficiently allege that he engaged in protected speech.  Even if true, the speech allegedly to be protected under the First Amendment is that Beckwith provided the news media with information describing a "labor controversy and picket line" at the Authority's offices.  Complaint ¶ 32.  According to Beckwith, his purpose was to draw public attention to a "frivolous and punitive disciplinary action taken against another employee," Complaint ¶ 32, which, according to Beckwith, represented "another abusive management decision," Complaint ¶ 34, constituting exercise of Beckwith's constitutional right to free speech.  *Id.* ¶ ¶ 35-36.  No where does Beckwith explain further the exact nature of such dispute.

That Beckwith may have considered the labor dispute and picket line newsworthy, and thus of potential public interest, does not, however, render his communication to the media protected for purposes of the First Amendment.  By his asserted speech, Beckwith, has not alleged he was attempting to correct pervasive or systemic misconduct or illegal activity, such as prohibed forms of employment discrimination or constitutional violations, by the Authority, *Kantha, supra*, but merely complained about what in his opinion, as a probationary employee, was "yet another abusive management decision" in the "long history of labor problems . . . caused by

11

poor and politically-motivated management practices." *Id.* ¶¶ 33-34.  Indeed, while

Beckwith found the Authority's action against a fellow employee to be "frivolous,"

Complaint ¶ 32, nowhere does Beckwith even allege the Authority's "abusive" action

was illegal as a violation of a collective bargaining agreement or applicable state or

federal laws.

Even accepting the truth of Beckwith's allegations, his allegedly protected

communication with the media, involved, at bottom, a matter of internal and, apparently,

lawful personnel actions by the Authority, and thus the communication, or speech, at

issue is not the subject of political, social or community interest. *Connick,* 461 U.S. at

140.  Significantly, Beckwith does not assert that the alleged "abusive management

decision" that motivated Beckwith's contact with the media in an effort to gain public

attention involved any abridgment by the Authority of the constitutional rights of the

subject employee.  Absent some special circumstances, it is doubtful Beckwith has

standing to raise such issues in any event.  It is well-accepted that if every

governmental agency's personnel decision were subjected to "intrusive oversight by the

judiciary in the name of the First Amendment," effective government administration

would be threatened and, in turn, the efficient provision of public services and benefits

would be jeopardized. *Id.*  Thus, in this case, Beckwith's communication with the media

does not transmute the reported labor dispute into a matter of public concern, and the

fact that such dispute involves a public employer like the Authority is not in itself

sufficient to establish the requisite degree of public concern in the communication.

*Rao, supra*.  Accordingly, as Beckwith has failed to allege that he was sanctioned

because he engaged in protected speech, Defendants' motion to dismiss the First

Amendment claim should be GRANTED.


**B.  Plaintiff's Fourth Amendment Claim – Third Cause of Action**.

Additionally, Beckwith argues that his Fourth Amendment rights were violated by the Authority's demand for his cellular telephone records reflecting Beckwith's communications to the media about the existence of the labor dispute.  Defendants contend that even if Beckwith's allegations in support of this cause of action are accepted as true there was, as a matter of law, be no constitutional violation, as there is no judicially recognized expectation of privacy in the telephone records at issue, and the nature of the relevant records is undisputed.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  The application of the Fourth Amendment depends on whether the person invoking its protection can claim a "justifiable," a "reasonable," or "legitimate expectation of privacy" that has been unreasonably invaded by government action. *See, e.g., Rakas v. Illinois*, 439 U.S. 128, 143 (1978).  This inquiry involves two discrete questions.  The first is whether the individual, by his conduct, has "exhibited an actual (subjective) expectation of privacy."  *Katz v. United States,* 389 U.S. 347, 361 (1967). The second question is whether the individual's subjective expectation of privacy is "one that society is prepared to recognize as 'reasonable.'" *Id.* (single quote marks in original); *see also Rakas*, 439 U.S. at 143-44 n. 12.

In *Smith v. Maryland*, 442 U.S. 735 (1979), the Supreme Court held that the

13

installation of a pen register – a device that captures the telephone number called by a target telephone – does not violate the Fourth Amendment because there is no reasonable expectation of privacy in the telephone numbers one dials.  In *Smith,* the Court noted that all telephone users realize that they must "convey" telephone numbers to the telephone company so that their calls can be completed, that records of their calls are kept for billing purposes, and that such records can be used to detect fraud and harassment and thus potentially available to law enforcement and other investigators.  *Smith v. Maryland,* 442 U.S. at 742.  Moreover, even if a person harbored some subjective expectation as stated, *supra*, that the phone numbers he dialed would remain private, this expectation is not "one that society is prepared to recognize as 'reasonable.'"  *Katz v. United States*, 389 U.S. at 361.  *See also Smith, supra*.  Further, it is well established that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.  *See, e. g., United States v. Miller*, 425 U.S. 435, 442-44 (1976) (bank records); *Couch v. United States*, 409 U.S. 322, 335-36 (1973) (financial records submitted to taxpayer's accountant); *United States v. White*, 401 U.S. 745, 752 (1971) (taped conversations to third party).

The court finds, therefore, assuming the truth of Beckwith's allegations, no Fourth Amendment violation occurred when the Authority requested, and in response Beckwith provided his cellular telephone records.  When Beckwith used his cellular telephone to call the media, he "voluntarily conveyed numerical information to the telephone company and 'exposed' that information to its equipment in the ordinary course of business," and therefore lost any reasonable expectation of privacy in the

existence and identity of such calls.  *Smith v. Maryland,* 442 U.S. at 744; *see also*

*Syposs v. United States,* 181 F.R.D. 224, 227-28 (W.D.N.Y. 1998) (while noting such

records to be outside the scope of the Fourth Amendment, court recognized a

legitimate interest in preserving the confidentiality of a physician's cell phone records

sufficient to support physician's standing to oppose discovery by subpoena in civil

litigation on physician's motion to quash subpoena).  Here, as Beckwith relies upon

records that are beyond the scope of the Fourth Amendment protections, Beckwith has

alleged no cognizable Fourth Amendment violation.

Opposing Defendants' motion as to this claim, Beckwith relies on *Leventhal v.*

*Knapek,* 266 F.3d 64 (2d Cir. 2001) finding in the context of public employee – plaintiff's

challenge to an employment disciplinary proceeding that employee had a reasonable

expectation of privacy in his office computer files.  *Leventhal, supra*, at 73-74; Plaintiff's

Memorandum at 3-4.   However, private records in one's office computer have not,

unlike Beckwith's record of cell phone calls in the instant case, been shared

electronically with the public utility providing such cell phone service.  As such,

*Leventhal* is inapposite and provides no support to sustain Plaintiff's Third Cause of

Action.  Accordingly, and the Defendants' motion to dismiss Beckwith's Third Cause of

Action should be GRANTED.[5]


### C.  Plaintiff's Section 1983 Claims Against the Authority and Individual Defendants

Alternatively, if the District Judge disagrees with the above analysis by finding

---

[5]  It is unnecessary to consider whether Beckwith consented to Defendants' alleged intrusion and thereby voluntarily waived any Fourth Amendment violations.

that Beckwith has properly asserted constitutional violations and that his § 1983 claims

survive Defendants' motion to dismiss, the court should also determine whether

Beckwith has sufficiently alleged an unlawful policy or custom by the Authority upon

which to proceed against the Authority on his § 1983 claims, and whether the individual

Defendants enjoy qualified immunity insofar as they are sued in their individual

capacities.  The court finds, at the outset, that Beckwith's claims against the individual

Defendants in their "official capacities" should be dismissed.  A claim against a

government official in his official capacity is merely another way of asserting a claim

against the governmental entity that employs the official.  *Monell v. Dep't of Soc. Servs.*

*of the City of New York,* 436 U.S. 658, 690 n.55 (1978); *Baines v. Masiello,* 288

F.Supp.2d 376, 384 (W.D.N.Y. 2003) ("a suit against a municipal officer in his or her

official capacity is functionally equivalent to a suit against the entity of which the officer

is an agent.").  Accordingly, as Beckwith has directly sued the Authority for the alleged

violations of his constitutional rights, his claims against Defendants Mendez, Kasprzak

and Cullinan-Szvoren in their official capacities are redundant to the Authority's

potential § 1983 liability, and, as such, should be DISMISSED.

In a § 1983 action, a municipality[6] may not be held liable for the "actions alleged

to be unconstitutional by its employees below the policymaking level on the basis of

respondeat superior."  *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995)

(citing *Monell*, 436 U.S. at 691).  In order to maintain a §1983 action against the

Authority as a municipal defendant, Beckwith must allege the existence of an official

municipal policy, and that his constitutional injuries were caused by that policy.  *Monell*,

---

[6]  The parties do not dispute the Authority is a "municipality" for purpose of § 1983.

436 U.S. at 690.  The existence of a municipal policy may be established in one of four

ways: (1) a formal policy officially endorsed by the municipality; (2) actions taken by the

government officials responsible for establishing municipal policies related to the

particular deprivation in question; (3) a practice so consistent and widespread that it

constitutes a custom or usage sufficient to impute constructive knowledge of the

practice to policymaking officials; or (4) a failure by policy makers to train or supervise

subordinates with *scienter* that such failure may foreseeably lead to specific types of

constitutional violations.  *Id.*  A municipal employee's single tortious decision or course

of action may constitute the act of the municipality and therefore provide a basis for

municipal liability, if "it is taken by, or is attributable to, one of the [municipality]'s

authorized policymakers."  *Amnesty America v. Town of West Hartford*, 361 F.3d 113,

126 (2d Cir. 2004).

In this action, Beckwith alleges that the individual Defendants "acted in

accordance with official policies, practices and customs of the AUTHORITY, or acted as

the official and final AUTHORITY decision-makers."  Complaint ¶¶ 52, 59.  Although

Beckwith does not specify an official policy, practice or custom that resulted in the

deprivation of his constitutional rights, he has alleged that actions taken by the

individual Defendants, acting as the Authority's policymakers, deprived him of his

asserted constitutional rights.  Defendants do not address this contention.  Defendants'

Memorandum of law at 14-16; Defendants' Reply on Motion to Dismiss at 6.  Therefore,

if the District Judge finds that Beckwith has sufficiently alleged constitutional

deprivations by the Authority's policy-makers named in the Complaint and determines

that Defendants' motion to dismiss should be denied on that ground, then Beckwith has

17

also sufficiently alleged a claim for municipal liability against the Authority under § 1983 and Defendants' motion to dismiss as to the Authority should be DENIED.

As noted, Beckwith has also sued the individual Defendants in their individual capacities.  Complaint at 1.  In an action brought pursuant to § 1983, qualified immunity shields a government official sued in his or her individual capacity from liability for damages insofar as the "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  Defendants argue that, as neither Beckwith's speech nor his cellular telephone records, alleged as the bases for his § 1983 claims, is constitutionally protected, the individual Defendants could not have violated any well-established federal constitutional right relevant to this case.  If the District Judge agrees that Beckwith has failed as a matter of law to allege any constitutional deprivation, then the individual Defendants sued in their individual capacities would be entitled to qualified immunity as no well-established constitutional right, as pleaded by Beckwith, was or could have been violated by Defendants.  However, if the District Judge finds that Beckwith has adequately alleged violations of his constitutional rights, the court must consider whether it was objectively reasonable for the individual Defendants to believe that their acts did not violate Beckwith's rights.  *See Anderson v. Creighton,* 483 U.S. 635, 638 (1987).  Whether qualified immunity should apply to the individual Defendants involves a fact-intensive inquiry that is generally ill-suited to determination on a motion to dismiss pursuant to Rule 12(b)(6).  *See Green v. Maraio*, 722 F.2d 1013, 1018 (2d Cir. 1983).  Accordingly, if the District Judge disagrees this court's finding that Beckwith has failed to allege a constitutional deprivation and determines that

18

Defendants' motion to dismiss should be denied on that basis, then Defendants' motion

to dismiss should also be DENIED on the grounds of qualified immunity.[7]  As

discussed, Discussion, *supra*, at 16, because Beckwith specifically alleged, Complaint

¶52, the individual Defendants were official policy-matters and acted upon policy or

custom against Beckwith, if the District Judge finds that Beckwith's pleaded recognized

constitutional rights were violated, the action may proceed against the Authority.

*Amnesty America, supra*.


2. <u>**Plaintiff's Article 78 Proceeding – The First Cause of Action**</u>.

As noted, Beckwith originally brought a special proceeding this as special

proceeding state court pursuant to Article 78 of the N.Y. Civil Practice Law & Rules, an

admittedly state law claim, which, because it also referenced § 1983, was removed to

this court by Defendants' Notice of Removal based on this court's original jurisdiction

over Beckwith's possible § 1983 claims, and Beckwith's assertion of supplemental

jurisdiction over the Article 78 state law claim.  Defendants' Notice of Removal ¶¶ 4, 5.[8]

However, this court has no original or supplemental subject matter jurisdiction

over Beckwith's Article 78 proceeding as neither federal nor New York state law

empower the federal courts to consider such claims, and, under New York law,

authority to grant relief pursuant to an Article 78 proceeding is exclusively vested in

---

[7] If Plaintiff's Second or Third Causes of Action are not, as recommended, dismissed, Defendants could pursue their qualified immunity defense through summary judgment or if material questions of fact exist, at trial.

[8] Beckwith erroneously asserts that removal of Beckwith's Article 78 the proceeding establishes subject matter in this court.  Complaint ¶ 2.  That an action, purporting to involve federal question jurisdiction, has been removed is not dispositive of the existence of a federal question basis for the district court's subject matter jurisdiction.  Such threshold issues require a subsequent determination by the court.

New York Supreme Court.  *See Blatch ex rel. Clay v. Hernandez,* 360 F.Supp.2d 595,

637 (S.D.N.Y. 2005); *Cartagena v. City of New York*, 257 F.Supp.2d 708, 710 (S.D.N.Y.

2003).  Federal courts have therefore consistently declined to exercise supplemental

jurisdiction over such claims.  *See, e.g., Birmingham v. Ogden*, 70 F.Supp.2d 353, 372

(S.D.N.Y. 1999) ("federal courts are loath to exercise jurisdiction over Article 78

claims."); *Camacho v. Brandon*, 56 F.Supp.2d 370, 380 (S.D.N.Y. 1999) ("we see no

reason to exercise [the court's] discretion [to exercise supplemental jurisdiction] by

adjudicating a purely state procedural [and substantive] remedy."); *Lucchese v.

Carboni*, 22 F.Supp.2d 256, 258 (S.D.N.Y. 1998) ("Article 78 proceedings were

designed for the state courts, and are best suited to adjudication there."); *Herrmann v.

Brooklyn Law School*, 432 F.Supp. 236, 240 (E.D.N.Y. 1976) ("[T]his special

proceeding designed to accommodate to the state court system is best suited to that

system."); *but see Yonkers Racing Corp. v. City of Yonkers*, 858 F.2d 855 (2d Cir.1988)

(in an "exceptional case," the court affirmed the exercise of "residual jurisdictional

authority" under the All Writs Act, 28 U.S.C. § 1651, over Article 78 proceeding that

went to the "very essence" of a federal consent decree), *cert. denied,* 489 U.S. 1077

(1989).

      An Article 78 proceeding is a "novel and special creation of [New York] state

law," *Camacho*, 56 F.Supp.2d at 379-80, and applicable state law therefore provides

that New York state supreme court has exclusive jurisdiction over Article 78 claims,

except those claims that must be brought in the appellate division of New York supreme

court.  *See* N.Y.Civil Prac. L. & R. 7804(b) (McKinney 1994); N.Y.Civ.Prac. L. & R.

506(b) (McKinney 2003).  Here, Beckwith's reinstatement and back pay, as well as

compensatory damages for any provable constitutional injuries are fully compensable under Beckwith's § 1983 claim.  Thus, the Article 78 claim in this case cannot be said to go to the "essence" of Beckwith's federal claims.  As state law does not permit Article 78 proceedings to be brought in federal court, absent an unusual circumstance warranting, pursuant to *Yonkers Racing Corp., supra*,  invoking the All Writs Act, this court lacks supplemental jurisdiction over Beckwith's Article 78 claim.[9]  The court's source for such jurisdiction, 28 U.S.C. § 1447, provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  As discussed, this court lacks original jurisdiction over Beckwith's Article 78 proceeding.  The court's recommended disposition of Beckwith's § 1983 claims does not reach the merits of Beckwith's Article 78 proceeding, Plaintiff's partial summary judgment or Defendants' related cross motion for summary judgment directed to such proceeding.  Accordingly, Beckwith's Article 78 proceeding, the First Cause of Action, should be REMANDED to state court, and Beckwith's motion for partial summary judgment seeking his reinstatement (Doc. No. 5) and Defendants' cross motion for summary judgment should be DISMISSED without prejudice.

## CONCLUSION

Defendants' motion to dismiss the Second and Third Causes of Action pursuant to Rule 12(b)(6) (Doc. No. 19) should be GRANTED.   Beckwith's Article 78 proceeding,

---

[9]  Neither side points to any federal law providing subject matter jurisdiction over an Article 78 proceeding.

the First Cause of Action, should be REMANDED to state court.  Beckwith's motion for partial summary judgment on Beckwith's Article 78 proceeding and Defendants' summary judgment cross motion addressed to such claim (Doc. Nos. 5, 23 respectively) should also be DISMISSED, without prejudice, and the Clerk of Court directed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     September 30, 2005
                 Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     September 30, 2005
               Buffalo, New York